UNITED STATES v. CHARLES BASHWINER, LUNHAM & REEVE, INC.
(No. 4288)[1]

[1] C. A. D. 131.

United States Court of Customs and Patent Appeals, May 29, 1940

*Webster J. Oliver*, Assistant Attorney General· (*Richard E. FitzGibbon*, special attorney, of counsel), for the United States.
*Walden & Webster* (*J. L. Klingaman* of counsel) for appellee.

[Oral argument April 12, 1940, by Mr. FitzGibbon and Mr. Klingaman]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

BLAND, Judge, delivered the opinion of the court:

The United States Customs Court, Second Division, sustained appellees' protests directed against the collector's classification of and assessment of duty upon certain machines, hereinafter described, at the rate of 27 ½ per centum ad valorem under the provision for "all other machines, finished or unfinished, not specially provided for" in paragraph 372, Tariff Act of 1930. From the judgment of said court so holding, the Government has appealed here.

There were three protests. In the first one, No. 942380–G/50373, the importer pointed out that the merchandise was "printers machines" and claimed the same to be dutiable at 25 per centum ad valorem under said paragraph 372. In the second protest, No. 947337–G/2946, it was stated that the merchandise is "printing or bookbinding machinery." It was claimed to be dutiable at 25 per centum ad valorem under said paragraph 372. In the third protest, No. 947336–G/2391, the importer designated the merchandise as being dutiable as "printing machinery" under said paragraph 372 at 25 per centum ad valorem.

The pertinent portions of paragraph 372, *supra*, read as follows:

PAR. 372. * * * printing machinery (except for textiles), bookbinding machinery, and paper-box machinery, 25 per centum ad valorem; * * * all other machines, finished or unfinished, not specially provided for, 27½ per centum ad valorem: * * *

Before the trial court and here appellees argue that they are not required either to state in their protests or to show by proof whether the imported machines are printing machinery, bookbinding machinery or paper box machinery, since the three kinds of machines are named in the single quoted phrase, and are all dutiable at the same rate.

The evidence, aside from certain portions thereof which will be quoted, may be summarized as follows: It shows that the instant machines are used for the purpose of pasting three layers of any kind of material together such as paper, leather, cardboard and other things. The inventor of the machines, Charles Bashwiner, testified

that while pasting machines of this character which were used for pasting paper upon cardboard had long been used in this country, no machine, until his invention, could paste together three layers of materials in one operation. This witness testified to the effect that his machine takes sheets of cardboard, 48 by 68 inches, in the raw state as they come from the mill, and pastes a piece of paper on either side of the cardboard; that ordinarily when so pasted the sheets may be used as material for display cards, as backs for books or for making paper boxes. The sheets are material which has not been specifically dedicated to any one particular purpose.

The evidence shows that in some establishments where books are made and bound, pasting machines of the class at bar are used for the purpose of pasting paper, printed or otherwise, upon heavy cardboard for the purpose of making book backs; that they are used in printing shops where matter is printed and then by the use of such pasting machines, the printed matter is pasted upon cardboard for display ads, etc. It is furthermore shown by the record that machines of this character are also used in paper box factories where paper, printed or otherwise, is pasted upon the cardboard which forms the box. The said inventor testified, in part, as follows:

Q. What is the work that these three machines you imported here do? Can you describe it?—A. Well, you can paste three sheets of anything at one time and combine them, whether it be sheets of cardboard, or whether it is one sheet of cardboard and two sheets of paper. In fact, any three pieces of material can be combined. Until I invented that machine, that operation could only be done with two pieces on any machine built. Before my time, it was only two sheets that could be combined.

Q. You said "combined." What do you mean by that?—A. By applying paste to two sheets and combining them one to the other.

The witness stated that this was the first importation of these particular machines; that bookbinders in this country used the greatest number of mounting or pasting machines, and that the machines were also used in printing establishments and paper box manufacturing plants.

The following is quoted as part of the testimony of Louis Roth, a New York printer:

Q. Which line of work, would you say from your experience, uses the largest number of pasting machines?—A. Of course, I would not guarantee my statement. It would have to be my guess.

Judge DALLINGER. From your experience, which would you say?

The WITNESS. From my experience, pasting machines are used by bookbinderies probably in the majority.

By Mr. KLINGAMAN:

Q. When you say in the majority, just what do you mean by that?—A. It is quite evident, in my opinion, there are a great many more stiff-covered books made than there are display material. So naturally, we would assume bookbinderies would have most of these pasting machines.

Q. Just what do you mean by in the majority, strictly speaking; that book-binderies use more than half of those in use, or do you mean simply to state that bookbinderies use more in number?—A. I think bookbinderies use more than any other trade.

Cross-examination by Mr. FITZGIBBON:

X Q. And you say that that opinion is based on your experience?—A. Yes.

X Q. Now, let us see. Your company uses these mounting machines to mount paper on cardboard, and then you send that to the bookbinding plant for binding? A. We do.

X Q. In your experience, a bookbindery would not use one of these mounting machines?—A. In our particular case.

X Q. It would not?—A. It would not.

X Q. That a is your experience?—A. We have not always had these machines.

He referred to the machines as mounting machines and later as pasting machines.

The Government introduced no evidence.

It is upon the testimony of said two witnesses that the importers rely in their contention that they have made a *prima facie* case that the involved machines should be classified under the provision for "printing machinery * * * bookbinding machinery, and paper-box machinery." Appellees take the position in this court that since the machines are used in all three of the arts to which the said three items of the paragraph refer, the machines should be held dutiable thereunder regardless of any chief use in any one particular named establishment. In addition to that, the appellees urge that the finding of the court below that machines of the class to which the importations belong were chiefly used in this country in bookbinding plants and therefore that they should be so regarded for dutiable purposes is amply supported by the record.

At the outset we are confronted with the fact that in protest 942380–G/50373 there is no claim that the machines constitute book-binding or paper-box machinery but the claim is there made that they are printers machines. The same is true as to protest 947336–G/2391. However, in protest 947337–G/2946 it is claimed that the machines are printing or bookbinding machinery. No claim is there made that they are paper-box machinery.

It may be observed that in paragraph 372 there is another provision as follows:

* * * cash registers, 25 per centum ad valorem. * * *

It would seem to follow that neither by reference to the rate of duty claimed in the paragraph nor by any definite language used in the protests are appellees in the position to contend that they have raised the question that the involved machines are paper-box machinery.

Under any theory that has been advanced, or as far as we know that could be logically advanced, it seems clear that the instant record does not show that the imported machines are printing machinery, and appellees in this court do not stress the contention that they are

such machinery. The machines have nothing whatever to do with the art of printing. The fact that they may be used in printing establishments where printed matter is pasted upon cardboard does not necessarily show that they are printing machinery.

As to the contention of the importers that the record shows that machines of this class are chiefly used in bookbinding plants, we think it is without merit. To say the most the record shows that there are only four such machines used in this country and that the inventor, who was one of the importers, was unable to do more than guess where the machines were chiefly used. It is obvious that these machines are suitable for use in plants where laminated cardboard is made which could be used in arts other than any of those stressed by appellees.

Now, assuming that definite proof as to where the machines were chiefly used, under the circumstances at bar, would be controlling, this fact is not disclosed by the instant record. We do not mean to hold that if the proof in this case had shown definitely that they were used to paste printed or unprinted matter on cardboard which eventually went into bookbindings the machines would be bookbinding machines. We only decide that the instant record does not show that the imported machines, or machines of the class to which they belong, were at any time chiefly used in bookbinding establishments in the United States. The testimony of the witnesses might be said to show that probably bookbinders use more of these machines than do the other two trades, but this falls far short of showing chief use. Where a thing has three uses and we assume that 34 per centum of the use is represented in one place and 66 per centum in two other places, surely it cannot be said that it is chiefly used in the place where 34 per centum of the use takes place. Under such a showing, obviously, its chief use is in the other industries.

But, even if we were in doubt about our conclusion as to appellees' proof of chief use, we think it proper to add that a machine which prepares materials upon which printing may be done or a material from which paper boxes may be made or which makes a stiff combined cardboard for book backs is not necessarily either a printing, box making or bookbinding machine. If the instant machine, which combines layers of paper and cardboard which may be used for bookbinding or for display ads or for paper boxes, is to be regarded as a bookbinding machine, it would necessarily follow, we think, that the machine that made the paper that was pasted onto the cardboard and the machine that made the cardboard would also be bookbinding machines.

Aside from certain cases cited on the general question of chief use, the only authority relied upon by appellees is the decision by this court in *United States* v. *Clay Adams Co., Inc.*, 20 C. C. P. A. (Customs) 285, T. D. 46078. That case involved the dutiable classification of a

combination of a microscope and a projecting apparatus. Paragraph 228 (b), Tariff Act of 1930, there involved, contains a provision for "projection lenses," another for "microscopes" and another for "all optical instruments, frames and mountings therefor." This court held that the terms "projection lenses" and "microscopes" did not describe the merchandise but that the provision for "all optical instruments [etc.]" did embrace the importation.

While it is apparent that the facts involved and the principles announced in that case are not exactly on all fours with those in the case at bar, and under any circumstances would not be controlling of the issue presented here, it seems to us that the reasoning of that case and the conclusion there arrived at are more in harmony with our views expressed in the instant case than with the contentions of appellees. There it was held, in substance, that a combination of a projection lens and a microscope could not be regarded as either but that it was described in the catch-all provision. In the situation at bar we have an article which is not aptly described either as printing machinery, bookbinding machinery, or paper-box machinery. Here, as in the *Clay Adams* case, *supra*, there is, however, a catch-all provision which we think aptly provides for the merchandise.

The trial court made the following finding:

* * * However, it appears from the entire record that pasting and mounting machines as a class are chiefly employed in bookbinding plants; and the testimony of the witness Roth is that the pasting and mounting machines installed in his printing establishment make stiff book covers which he sends to bookbinders.

As above stated, there is no evidence in the record that supports the conclusion that mounting machines of the class at bar are chiefly employed in bookbinding.

The judgment of the United States Customs Court is *reversed*.